# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CESSNA AIRCRAFT COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 12-1445-CM |
| AVCORP INDUSTRIES, INC., | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on two motions relating to a November 16, 2012 arbitration award. Plaintiff moves to vacate the award (Doc. 1),[1] and defendant moves to affirm it (Doc. 12). For the following reasons, the court affirms the arbitration award and enters judgment accordingly.

### I.  Factual Background

In February 2001, the parties entered into a Strategic Alliance Agreement ("SAA"). Under this agreement, plaintiff agreed to produce specific aircraft components for defendant. The SAA also included an arbitration clause for disputes arising in connection with the SAA.

In December 2010, plaintiff notified defendant that it would be transitioning all components manufactured by defendant under the SAA to alternate sources. Defendant contended that this notification constituted a material breach of the SAA and initiated arbitration against plaintiff on June 7, 2011. The three-arbitrator panel conducted a two-week evidentiary hearing in August 2012. At the hearing, the panel heard testimony from nineteen witnesses and admitted over 200 exhibits. The panel also accepted post-hearing briefs.

---

[1]  As explained below, the court considers plaintiff's "complaint" as a motion to affirm the arbitration award. *See* 9 U.S.C. § 6 (explaining that applications to vacate an arbitration award must be considered "in the manner provided by the law for the making and hearing of motions").

-1-

On November 16, 2012, the panel issued a final award in favor of defendant. In reaching this award, the panel concluded that the SAA was ambiguous but the extrinsic evidence indicated that the SAA was an exclusive contract between plaintiff and defendant. This meant that plaintiff could not transition work to other suppliers absent a breach or unless defendant failed to materially satisfy the requirements of the SAA. A majority of the panel determined that defendant neither breached nor materially failed to satisfy the requirements of the SAA and, therefore, plaintiff breached the SAA by transitioning work. The panel concluded plaintiff's breach resulted in damage to defendant in the amount of $27,391,372.00.[2]

On November 26, 2012, plaintiff filed a complaint alleging that the arbitration award should be vacated because the panel acted in manifest disregard of the law and because the award violates public policy. Defendant subsequently filed a motion to affirm the arbitration award and to dismiss plaintiff's complaint. Defendant also requests that the court award prejudgment interest on the confirmed award and defendant's attorney's fees and costs incurred in this action.

## II.    The Federal Arbitration Act

The Federal Arbitration Act ("FAA") governs this proceeding. This act expresses the federal policy favoring arbitration. *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001). A party to an arbitration may ask the court to affirm an arbitration award if the parties have agreed that a judgment of the court shall be entered upon the award being made. 9 U.S.C. § 9. The court must affirm the award unless the award has been vacated, modified, or corrected. *Id.*

An award may be vacated by the court only on limited grounds. *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1275 (10th Cir. 2005). Section 10 of the FAA provides

---

[2] One panel member concluded that plaintiff was allowed to transition work because defendant's poor quality and delivery performance constituted a material breach under the SAA. This panel member, however, agreed with the damage analysis set forth in the award if there had been a breach.

four circumstances for vacating an award. 9 U.S.C. § 10. In addition to these statutory reasons, the Tenth Circuit allows an award to be vacated when the arbitrators acted in manifest disregard of the law or when the award violates public policy.[3] *See Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001) (listing judicially created reasons for overturning an award).

### III. The Court Considers Plaintiff's Complaint As A Motion To Vacate

The initial matter before this court is the proper procedure for resolving the issues raised by the parties. Plaintiff contends that its complaint is subject to the regular rules of notice pleading. Plaintiff argues that, absent defendant showing that plaintiff failed to state a claim, this proceeding to vacate the arbitration award should progress to discovery. Plaintiff also claims that defendant's motion to confirm the arbitration award is improper because defendant has not filed an answer and "does not have an affirmative pleading on file" in this case. (Doc. 17 at 9 n.1.)

Plaintiff misconstrues the procedure for resolving requests to vacate or affirm an arbitration award. Under the FAA, a party to the arbitration may apply to a district court for an order affirming or vacating an arbitration award. 9 U.S.C. §§ 9–10. The application to affirm or vacate "shall be made and heard in the manner provided by law for the making and hearing of motions . . . ." *Id.* at § 6. This section makes clear that a request to vacate or affirm an arbitration award shall be made in the form of a motion—not in the form of a complaint or other pleading. *See Abbott v. Law Office of Patrick Mulligan*, 440 F. App'x 612, 616 (10th Cir. 2011) (explaining that an application to vacate an award will be treated as a motion).

Plaintiff's position also demonstrates a misunderstanding of the role of the Federal Rules of Civil Procedure in this proceeding. The Federal Rules apply to this proceeding to the extent that the FAA does not provide its own procedure. Fed. R. Civ. P. 81(a)(6)(B). As just explained, the FAA

---

[3] The Tenth Circuit still recognizes manifest disregard of the law as a basis for overturning an award. *See Abbott v. Law Office of Patrick J. Mulligan*, 440 F. App'x 612 (10th Cir. 2011) (recognizing circuit split but declining to jettison the manifest disregard standard absent firm guidance from the Supreme Court).

instructs that applications to vacate or affirm arbitration awards should be treated as motions. Because the FAA provides this procedure, the requirements of Rule 8(a) and the protections of Rule 12(b)(6) have no impact on the court's resolution of the current issues. *See O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc.*, 857 F.2d 742, 745–46 (11th Cir. 1988) (discussing the interplay of the FAA and the Federal Rules and rejecting the argument that an application to vacate an arbitration award can be brought as a complaint that is subject to the Rule 12(b)(6) dismissal standard).

Plaintiff's complaint is, in substance, a motion. *See Vore v. Howell Constr. Co.*, No. 98-2391-KVH, 1999 U.S. Dist. LEXIS 3243, at *1–2 (D. Kan. Jan. 4, 1999) (treating complaint as a motion to vacate the arbitration award). It is thirty-eight pages, contains multiple case citations, and adequately provides plaintiff's arguments on the issue of whether the arbitration award should be vacated. *See Questar Capital Corp. v. Gorter*, No. 12-00004, 2012 U.S. Dist. LEXIS 163380, at *10–26 (W.D. Ky Nov. 15, 2012) (analyzing case law on this issue and determining that complaint should be treated as a motion to vacate). Therefore, in the court's view, this case has competing motions on file. Plaintiff has moved to vacate the arbitration award, and defendant has moved to affirm it. These motions are briefed, and the court now considers the merits of each party's position.

**IV.    The Court Affirms The Arbitration Award**

The FAA provides that:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9. The arbitration provision in the SAA states that arbitration shall be "conducted under the rules of the American Arbitration Association . . . ." (Doc. 18-12 at 20.) The AAA rules provide that "[p]arties to an arbitration under these rules shall be deemed to have consented that judgment upon the

arbitration award may be entered in any federal or state court having jurisdiction thereof." R-48(c), AAA Commercial Arbitration Rules & Mediation Procedures (available at www.adr.org) (last visited April 30, 2013).

Based on these provisions, the parties agreed that—upon a timely application—a judgment of the court can be entered on the November 16, 2012 arbitration award. Defendant has timely applied. Unless plaintiff demonstrates that the award should be vacated, the court must affirm the award and enter judgment accordingly. 9 U.S.C. § 9; *see also Young v. Am. Nutrition, Inc.*, 537 F.3d 1135, 1141 (10th Cir. 2008) (holding that the party seeking to vacate the award has the burden of providing the court with the evidence to support its arguments).

Plaintiff argues that the award should be overturned because the panel acted in manifest disregard of the law and because the award violates public policy. In analyzing both arguments, the court is mindful that its review under the FAA is strictly limited. The court must apply a "highly deferential" standard of review that has been described as "among the narrowest known to the law." *Bowen*, 254 F.3d at 932 (quoting *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995)).

### A.  The panel did not act in manifest disregard of the law

Plaintiff's principal argument is that the panel acted in manifest disregard of the law on three occasions. Manifest disregard of the law means "willful inattentiveness to the governing law" and is something more than "error or misunderstanding with respect to the law." *ARW Exploration*, 45 F.3d at 1463 (internal quotation and citation omitted). The record must show that the panel "knew the law and explicitly disregarded it." *DMA Int'l v. Quest Commc'n Int'l*, 585 F.3d 1341, 1344 (10th Cir. 2009) (internal quotation omitted).

**First,** plaintiff contends that the panel acted in manifest disregard of the law by concluding that the SAA was ambiguous and exclusive. In the award, the panel discussed and applied Kansas law on

-5-

contract interpretation and concluded that the SAA was unclear on the issue of exclusivity. The panel noted that the SAA did not include the phrases "sole source" or "exclusive" but also recognized that sections 4.0, 4.3, 5.0 and 17 suggested that the SAA was exclusive. The panel next analyzed the extrinsic evidence and determined that the parties intended for the contract to be exclusive. Although there is arguably extrinsic evidence indicating that the SAA was non-exclusive, there is also evidence supporting the panel's interpretation. Because the SAA is susceptible to the panel's construction, the court will not vacate the award on this basis. *See Jenkins v. Prudential-Bache Sec., Inc.*, 847 F.2d 631, 635 (10th Cir. 1988) (noting that a court "will not interfere with an arbitrator's decision unless it can be said with positive assurance that the contract is not susceptible to the arbitrator's interpretation") (internal quotation and citation omitted).

**Second,** plaintiff complains that the panel disregarded the law by determining that defendant's late deliveries of non-conforming goods did not constitute a material breach of the SAA. This argument also fails. The majority of the panel discussed the relevant provisions of the SAA and Kansas law regarding contract interpretation and material breaches. On the issue of non-conforming goods, the majority considered plaintiff's evidence (e.g., the Supplier Corrective Action Request program and other incidents of non-conforming goods) but gave more weight to defendant's evidence (e.g., the Maturity Path Document, amendments to the SAA, etc.). On the issue of late deliveries, the majority determined that the SAA was ambiguous as to whether defendant was to deliver to purchase order dates or agreed to delivery schedules. After reviewing the extrinsic evidence, the majority concluded that the parties made accommodations with regard to deliveries and that defendant's conduct did not constitute a material breach.[4] The court must afford the majority's assessment of the

---

[4] Plaintiff also argues that the majority of the panel acted in manifest disregard of the law when it concluded that plaintiff waived defendant's late delivery breaches. The majority did not make this finding. Instead, the majority observed that plaintiff's continued work with defendant despite the complaints of late deliveries indicated that the late deliveries were not a material breach.

evidence great deference and will not overturn the award simply because there is a dissenting opinion or because plaintiff identifies evidence supporting a different outcome.[5]

**Third**, plaintiff argues that the panel disregarded the law by awarding defendant $27 million in lost profit damages. Plaintiff explains that the arbitrators ignored Kansas law that requires a party to be profitable before lost profit damages can be awarded. Plaintiff presented the panel with its interpretation of Kansas law on this issue. Although the panel's decision did not specifically discuss this matter, the panel ultimately awarded defendant lost profit damages. (*See* Doc. 12-1 at 14 (concluding that the "lost profits methodology used by both experts is the proper methodology").) It then analyzed the evidence and resolved various disputes on the amount. Based on this record, the most that plaintiff has shown is that the panel misapplied or misinterpreted the law—not that the panel explicitly disregarded it.

Plaintiff also failed to demonstrate that the law on this issue was clearly established and precluded defendant's damages. The law indicates that a party seeking "lost profits" must demonstrate the amount with "reasonable certainty." *Vickers v. Wichita State Univ.*, 518 P.2d 512, 515 (Kan. 1974). One method of "establishing a loss of profits with reasonable certainty is by showing a history of past profitability." *Id.* at 517. This statement indicates that there are other methods for satisfying the reasonable certainty standard and suggests that past profitability is not an absolute prerequisite to recovery of lost profit damages. Given this law, plaintiff has not shown that it presented the panel with a clearly defined legal principle that prevents the remedy and the panel expressly chose to disregard it.

---

[5] The fact that there is a dissenting opinion undermines plaintiff's argument that the panel ignored its evidence. *See PeopleSoft, Inc. v. Amherst, L.L.C.*, 369 F. Supp. 2d 1263, 1269 (D. Colo. 2005) (explaining that the existence of "an articulate and persuasive dissent, even if it did not carry the day, enhanced the credibility of the majority opinion by showing that it survived the crucible of contemporaneous criticism").

Plaintiff makes a variety of other challenges to the damages amount. Nothing in the record suggests the panel intentionally disregarded the law in reaching this amount. The other alleged shortcomings relate to factual determinations. It is the panel's role—not the court's—to assess expert credibility, weigh the evidence, and make findings of fact. As such, the panel's factual findings are beyond the court's review. *See ARW Exploration*, 45 F.3d at 1463 (stating that courts "are not to instruct the arbitrator as to the correct computation of damages").

### B. **The award does not violate public policy**

Plaintiff also argues that the award violates public policy. The court does not have broad authority to overturn arbitration awards as against public policy. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43 (1987). Instead, the Supreme Court has discussed two requirements for setting aside an arbitration award on this ground. *Id.*; *see Peoplesoft, Inc. v. Amherst, L.L.C.*, 369 F. Supp. 2d 1263, 1267–68 (D. Colo. 2005) (analyzing case law and discussing two requirements). First, the alleged public policy must be properly framed. *Id.* This means "examination of whether the award created any explicit conflict with other laws and legal precedents rather than an assessment of general considerations of supposed public interests." *Id.* (internal quotation and citation omitted). Second, a violation of the public policy must be "'clearly shown.'" *Id.* (quoting *Misco*, 484 U.S. at 43).

The public policy arguments advanced by plaintiff fail to satisfy this stringent standard. The panel's determination that the SAA is exclusive does not undermine the public policy of freedom to contract because this interpretation of the SAA is not in manifest disregard of the law.[6] Similarly, the panel's conclusion that there was no material breach does not violate public policy by equating cooperation with waiver. The panel did not make a determination on waiver. And, regardless, plaintiff has only shown a general consideration of public policy and not an explicit conflict with other

---

6  Plaintiff's claim that the panel's ruling on this issue creates a "new default . . . that all supplier contracts are sole source contracts, unless expressly stated otherwise within the contract" mischaracterizes the panel's decision, which is limited to the specific facts of this case. (Doc. 1 at 36.)

laws. Finally, the award does not violate public safety grounds. The panel's analysis focused on whether defendant breached the SAA—not whether the delivered goods complied with federal aviation regulations.

Throughout its briefs, plaintiff merely rehashes evidence and arguments presented to the panel. This court does not review the panel's decision in an appellate capacity. *See Jenkins*, 847 F.2d at 635 ("Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.") (internal quotation and citation omitted). Nor does the court consider whether it would have reached the same result had it heard the case *de novo*. *See, e.g.*, *Terk Techs. Corp. v. Dockery*, 86 F. Supp. 2d 706, 708 (E.D. Mich. 2000) ("Arbitration does not provide a system of 'junior varsity trial courts' affording the losing party complete and rigorous *de novo* review."). Instead, the court performs the limited review authorized by the FAA and interpretative case law. Based on this review, plaintiff has not demonstrated that the November 16, 2012 award should be vacated. Therefore, the court must affirm it. Defendant shall submit a proposed judgment consistent with the arbitration award and this memorandum and order within seven days.

**V.     The Court Awards Prejudgment Interest**

Defendant requests prejudgment interest on the confirmed award at the rate of 10% per annum from November 16, 2012 (the date of the arbitration award) through the entry of judgment. The Tenth Circuit has stated that "[t]he granting of prejudgment interest from the date of the arbitrator's award in an action seeking to confirm that award is a question of federal law entrusted to the sound discretion of the district court." *United Food & Commercial Workers, Local Union No. 7R v. Safeway Stores, Inc.*, 889 F.2d 940, 949 (10th Cir. 1989).

Based on the facts of this case, the court determines that an award of post-award, prejudgment interest is just and will fairly compensate defendant for the lost use of the arbitration award from the date it was due (i.e., December 16, 2012) through judgment. *See* Doc. 12-1 at 24; *see also Kalmar*

*Indus. USA L.L.C. v. Int'l Bhd. of Teamsters Local 838*, 452 F. Supp. 2d 1154, 1167 (D. Kan. 2006) ("An award of prejudgment interest is proper if it would compensate the wronged parties and so long as other equities would not make such an award unjust."); *United States ex rel. Nat'l Roofing Servs., Inc. v. Lovering-Johnson, Inc.*, 53 F. Supp. 2d 1142, 1148 (D. Kan. 1999) (awarding post-award, prejudgment interest from the date the award was due). The court also determines that the interest rate provided by Kansas law is equitable. *See Kalmar*, 452 F. Supp. 2d at 1167 (explaining that courts "generally look to state law to determine the rate of prejudgment interest"); Kan. Stat. Ann. 16-201 (providing that "[c]reditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due . . . from and after the end of each month, unless paid within fifteen days thereafter"). Accordingly, in its discretion, the court awards defendant post-award, prejudgment interest at the rate of 10% per annum from December 16, 2012, through the entry of judgment in this case.

Plaintiff complains that this award is improper under Kansas law because the arbitration award is not liquidated given that plaintiff disputes the amount. Even assuming that state law—rather than federal law—governs this issue, plaintiff's argument is unconvincing.[7] Under Kansas law, a claim is liquidated when the amount due and the date on which it is due are fixed and certain. *Equity Investors, Inc. v. Academy Ins. Group, Inc.*, 625 P.2d 466, 468–69 (Kan. 1981). The arbitration award expressly states that plaintiff owes defendant $27,391,372.00, by December 16, 2012. The due date and amount are fixed even though plaintiff contests the merits underlying the award.

---

[7] Plaintiff argues that the most recent opinion from the Tenth Circuit requires application of state law in determining the issue of prejudgment interest. The court agrees that in *Hicks v. Cradle Co.*, 355 F. App'x 186, 199 (10th Cir. 2009), the panel applied Tennessee law when evaluating post-award, prejudgment interest. But *Hicks* is unpublished. Although this is a distinction that is frequently overlooked, the court follows published opinions when the case law is conflicting. Regardless, the outcome in this case is the same under Kansas law.

-10-

Plaintiff also argues that the court should apply the federal post-judgment interest rate of 0.19% instead of the Kansas rate of 10% per annum. The court disagrees. The award in this case was issued in Kansas, is against a Kansas company, and was reached by a panel applying Kansas law. Therefore, the interest rate established by the Kansas legislature is equitable under these circumstances. *See United States ex rel. Nat'l Roofing Servs.*, 53 F. Supp. 2d at 1148 (applying 10% per annum interest rate); *Kan-Pak, L.L.C. v. Hydroxyl Sys., Inc.*, No. 08-1079-WEB, 2011 U.S. Dist. LEXIS 24103, at *6–7 (D. Kan. Mar. 8, 2011) (same).[8]

## VI. The Court Does Not Awards Attorney's Fees And Costs

Defendant also requests attorney's fees and costs under 28 U.S.C. § 1927, claiming that plaintiff's actions have unreasonably multiplied the proceedings. Section 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

This statute allows for an award of fees and costs against an attorney. Defendant's motion, however, is directed to unreasonable and vexatious actions by plaintiff. (*See, e.g.*, Doc. 13 at 38 ("Instead, [plaintiff] refuses to accept the outcome and has chosen to drag this dispute through the court system."); *id.* ("[Plaintiff] knew that findings of fact and even clear legal errors are not reviewable by this Court."); *id.* ("[Plaintiff] knew that the mere fact that the Panel disagreed with [plaintiff's] positions is not grounds to vacate the Award.").) Because this statute does not provide a basis for awarding fees against plaintiff and because defendant has not provided specific instances of misconduct by plaintiff's

---

[8] Plaintiff heavily relies on *Guang Dong Light Headgear Factory Co. v. ACI International, Inc.*, No. 03-4165-JAR, 2008 U.S. Dist. LEXIS 35392 (D. Kan. Apr. 28, 2008), to argue for a lower interest rate. In that case, the court noted that the state interest rate would "overcompensate [the plaintiff] and to an extent, reward it for the delay derived from its incomplete discovery responses which most certainly prolonged this litigation . . . ." *Id.* at *17–18. The court also expressly declined to shorten the time period during which the plaintiff recovered prejudgment interest because any unfairness from the delay "is adequately compensated for by the federal interest rate." *Id.* at *18 n.32. The facts of this case are different.

-11-

counsel, the court declines defendant's request. *See Lowery v. Cnty. of Riley*, 738 F. Supp. 2d 1159, 1169–70 (D. Kan. 2010) (concluding that the statute did not provide a basis for an award of fees against a party). The court cautions plaintiff that it would have **seriously considered** a motion for attorney's fees had defendant identified appropriate authority.

**IT IS THEREFORE ORDERED** that plaintiff's motion to vacate the arbitration award (Doc. 1) is denied.

**IT IS FURTHER ORDERED** that Defendant's Motion To Confirm Final Arbitration Award, Dismiss Complaint, And For Award of Prejudgment Interest, Attorneys' Fees and Costs (Doc. 12) is granted in part. The court affirms the November 16, 2012 arbitration award. Defendant shall submit a proposed judgment consistent with the arbitration award and this memorandum and order within seven days. The court denies defendant's motion to dismiss as moot. The court awards post-award, prejudgment interest at the rate of 10% per annum from December 16, 2012, through the date of judgment in this action. The court denies defendant's request for attorney's fees and costs.

Dated this 1st day of May, 2013, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
United States District Judge